IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES L. ALDRIDGE, GARY BARNETT,
KEVIN B. CARTER, DAVID L. CHAPMAN,
CHARLES D. GLASPELL, WILLIAM F. GOSS,
JOHN KELLAWAY, JEFFREY D. WATSON,
and THOMAS S. ZAPACH,

               Plaintiff,

v.                         //   CIVIL ACTION NO. 1:17CV79

                              Consolidated with 1:17CV80,
                              1:17CV81, 1:17CV82, 1:17CV83,
                              1:17CV84, 1:17CV85, 1:17CV86,
                              and 1:17CV87
                                    (Judge Keeley)

THE MARION COUNTY COAL CO.;
MURRAY AMERICAN ENERGY, INC.;
ROBERT E. MURRAY; PAUL B. PICCOLINI;
PAMELA S. LAYTON; BRIAN FREDERICKSON;
MATTHEW C. EFAW; and THOMAS H.
SIMPSON, a/k/a "Pete,"

               Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS
TO STRIKE AND GRANTING PLAINTIFFS' MOTIONS TO REMAND**

On March 14, 2017, nine individual plaintiffs filed separate employment discrimination complaints in the Circuit Court of Marion County, West Virginia ("Circuit Court"), against the defendants, The Marion County Coal Co. ("TMCC"), Murray American Energy, Inc., Robert E. Murray ("Murray"), Paul B. Piccolini, Pamela S. Layton ("Layton"), Brian Frederickson, Matthew C. Efaw ("Efaw"), and Thomas H. Simpson, a/k/a "Pete" ("Simpson"). On May 15, 2017, the defendants removed each case, invoking diversity jurisdiction based

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS
TO STRIKE AND GRANTING PLAINTIFFS' MOTIONS TO REMAND**

on the allegation that Layton and Simpson, both West Virginia residents, had been fraudulently joined to defeat diversity.

At a combined scheduling conference held on July 24, 2017, the Court heard argument on the pending motions. With the consent of the parties, it consolidated the nine cases prior to ruling on the pending motions, and designated as lead case the complaint filed by the plaintiff, James L. Aldridge ("Aldridge").[1] For the reasons stated on the record during the scheduling conference and those that follow, the Court **DENIED** the defendants' motions to strike, **GRANTED** the plaintiffs' motions to remand, and **REMANDED** these cases to the Circuit Court of Marion County.

### I. BACKGROUND

The plaintiffs' allegations arise primarily out of three reductions in force that took place at TMCC mines in May 2015, December 2015, and April 2016. On March 14, 2017, each of the plaintiffs filed a complaint in the Circuit Court, alleging violations of the West Virginia Human Rights Act ("WVHRA") and public policy. All nine were employed by TMCC and allege that the decision to terminate their employment, or to engage in a

---

[1] Unless otherwise noted, docket entries in this memorandum opinion and order refer to Aldridge's case, Civil Action No. 1:17cv79.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS
TO STRIKE AND GRANTING PLAINTIFFS' MOTIONS TO REMAND**

discriminatory course of conduct that caused them to resign, was improperly based on each plaintiff's age or disability.

With few exceptions, Aldridge's complaint is a fair representation of those filed in each of the removed cases. Aldridge named three allegedly non-diverse defendants. Those include Layton, who is the TMCC Human Resources Supervisor, Efaw, who is is a TMCC mine manager,[2] and Simpson, who is TMCC's Vice President (Dkt. No. 1-1 at 7). According to Aldridge, he was employed by the defendants as a safety inspector from December 5, 2013, until May 29, 2015, when he was terminated after being provided a letter announcing a reduction-in-force due to adverse market conditions. Id. at 8.

In his first claim for relief, Aldridge alleges that his "termination . . . was based, in whole or in part, upon [his] age, in violation of the West Virginia Human Rights Act, West Virginia

---

[2] Efaw executed an affidavit stating that, in September 2016, he returned to Illinois where he is employed, maintains a bank account, is attempting to purchase his rented residence, has purchased land upon which he considers constructing a home, and intends to remain indefinitely. See Sun Printing & Publ'g Ass'n v. Edwards, 194 U.S. 377, 383 (1904) (noting that domicile is governed by residence and the intention to remain). Because the plaintiffs have not provided any contrary evidence, the Court will assume that Efaw is not a West Virginia resident.

Code § 5-11-9(1)."[3] He asserts damages based on "the defendants' actions." Id. Aldridge's second claim contends that "[t]he Defendants refused to provide the Plaintiff a reasonable accommodation," and that such "[d]iscrimination based upon a disability violates the West Virginia Human Rights Act, W. Va. Code § 5-11-1 et seq." Although he claims that age discrimination led to his termination, Aldridge also alleges that disability discrimination led to his constructive discharge.[4] In his third and fourth claims, Aldridge alleges that the defendants violated the WVHRA, conferring jurisdiction on the Circuit Court pursuant to W. Va. Code § 55-7-9, and that they violated West Virginia public policy. Id. at 9-10. For relief, he seeks "lost wages and benefits, back pay, front pay, damages for indignity, embarrassment and humiliation, and punitive damages." Id. at 11.

When the defendants removed the cases to this Court on May 15, 2017, they alleged fraudulent joinder. To rebut that, Layton and Simpson each executed an affidavit averring that they "did not have input into, and participated in no way in" TMCC's decision to

---

[3] Plaintiffs Glaspell and Kellaway base their age discrimination claims on constructive discharge.

[4] Plaintiffs Barnett, Watson, and Zapach do not make claims for disability discrimination.

terminate the plaintiffs (Dkt. Nos. 1; 1-2; 1-4). They argued that the plaintiffs therefore could not possibly establish a cause of action against them under the WVHRA (Dkt. No. 1 at 4). The next day, the defendants all filed three motions seeking to dismiss each complaint (Dkt. Nos. 5; 7; 9).

On May 24, 2017, each plaintiff filed an amended complaint as of right (Dkt. No. 13), a motion to remand (Dkt. No. 16), and a motion to stay rulings on the pending motions to dismiss until after the Court ruled on the motion to remand or, in the alternative, to deny the motions to dismiss as moot (Dkt. No. 14). On June 2, 2017, the Court denied the defendants' motions to dismiss as moot (Dkt. No. 18). After briefing the motions to remand, the defendants moved to strike as untimely the plaintiffs' reply briefs or, in the alternative, their corresponding affidavits (Dkt. No. 22).

## II. STANDARDS OF REVIEW

### A.    Removal and Remand

Title 28 U.S.C. § 1441(a) provides that "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants." See also King v. Marriott Int'l, Inc., 337 F.3d

421, 424 (4th Cir. 2003). Nonetheless, "federal courts, unlike state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations," Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008), and federalism counsels that removal jurisdiction should be strictly construed. Palisades Collections LLC v. Shorts, 552 F.3d 327, 334 (4th Cir. 2008) (citing Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005)).

"The burden of establishing federal jurisdiction is placed upon the party seeking the removal." Mulcahey v. Columbia Organic Chems., Inc., 29 F.3d 148, 151 (4th Cir. 1994). "All doubts about the propriety of removal should be resolved in favor of retaining state court jurisdiction," and thus remanding a case to state court. Vitatoe v. Mylan Pharm., Inc., 2008 WL 3540462, at *2 (N.D.W. Va. Aug. 13, 2008) (citing Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999)).

**B.    Fraudulent Joinder**

"The district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states . . . ." 28 U.S.C. § 1332(a). This provision

has been consistently interpreted "to require complete diversity of citizenship of each plaintiff from each defendant." <u>Rosmer v. Pfizer Inc.</u>, 263 F.3d 110 (4th Cir. 2001) (Motz, J., dissenting) (citing <u>Strawbridge v. Curtiss</u>, 7 U.S. (3 Cranch) 267 (1806)).

Naming a non-diverse defendant does not necessarily defeat diversity jurisdiction. The doctrine of fraudulent joinder "effectively permits the district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." <u>Mayes v. Rapoport</u>, 198 F.3d 457, 461 (4th Cir. 1999). In the Fourth Circuit, "[t]he party alleging fraudulent joinder bears a heavy burden-it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." <u>Johnson v. Am. Towers, LLC</u>, 781 F.3d 693, 704 (4th Cir. 2015) (quoting <u>Hartley</u>, 187 F.3d at 424).

"The removing party must show either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." <u>Id.</u> (internal quotation and citation omitted). When a removing party contends that there is "no possibility" of establishing a cause of

action, "a plaintiff's claim against a non-diverse defendant 'need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted.'" <u>Id.</u> (quoting <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 233 (4th Cir. 1993)).

A mere "glimmer of hope" suffices, a standard "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." <u>Mayes</u>, 198 F.3d at 466 (quoting <u>Hartley</u>, 187 F.3d at 424). "[T]he court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" <u>AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.</u>, 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting <u>Dodd v. Fawcett Publ'ns, Inc.</u>, 329 F.2d 82, 85 (10th Cir. 1964)).

### III. APPLICABLE LAW

The WVHRA makes it an "unlawful discriminatory practice . . . [f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required." W. Va. Code § 5-11-9(1). An "employer" is "any person employing twelve or more persons within the state." <u>Id.</u> § 5-11-3(d).

In addition, the WVHRA imposes liability on individuals. It is an "unlawful discriminatory practice . . . [f]or any person to":

(A)    Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section[.]

Id. § 5-11-9(7).

"The term 'person,' as defined and utilized within the context of the West Virginia Human Rights Act, includes both employees and employers. Any contrary interpretation, which might have the effect of barring suits by employees against their supervisors, would be counter to the plain meaning of the statutory language and contrary to the very spirit and purpose of this particular legislation." Syl. Pt. 3, Holstein v. Norandex, Inc., 461 S.E.2d 473 (W. Va. 1995); see also W. Va. Code § 5-11-3(a). "A cause of action may be maintained by a plaintiff employee as against another employee under the West Virginia Human Rights Act. Further, the cause of action may properly be based upon an allegation that the defendant employee aided or abetted an employer engaging in unlawful discriminatory practices." Holstein, 461 S.E.2d 473, Syl. Pt. 4.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS
TO STRIKE AND GRANTING PLAINTIFFS' MOTIONS TO REMAND**

## IV. DISCUSSION

**A.   Motion to Strike**

The Court first must consider the defendants' motions to strike as untimely the plaintiffs' reply briefs or, alternatively, their corresponding affidavits (Dkt. No. 22).

**1.   Untimely Filing**

After the defendants responded to their motions to remand on June 7, 2017, the plaintiffs filed reply memoranda two days late, on June 16, 2017. The defendants argue that, because the plaintiffs' reply memoranda were not filed within seven days, they must be stricken as untimely (Dkt. No. 23 at 2-3). The plaintiffs note that the Local Rules of General Procedure ("Local Rules") permit three additional days to reply when service of a response is by electronic means, and that the Court should excuse their misinterpretation of the rules (Dkt. No. 24 at 4-5).

The initial question presented is whether the rules provided seven or ten days in which the plaintiffs could file their reply memoranda. Prior to 2016, Fed. R. Civ. P. 6(d) added three days to a seven-day reply period if service of a response had been made by electronic means. That provision is no longer in effect, but unamended Local Rule 5.06(b) continues to equate electronic service

10

with service by first class mail, and Local Rule 5.06(g) provides that, "[p]ursuant to Fed. R. Civ. P. 6(d) . . . service by electronic means is treated the same as service by mail for purposes of adding three (3) days to the prescribed period to respond."

The Local Rules also state that they "supplement and complement the Federal Rules of Civil Procedure . . . and are applied, construed, and enforced to avoid inconsistency with those controlling statutes and other rules." Critically, Local Rule 5.09 specifically directs the application of revised Fed. R. Civ. P. 6, and the Court's electronic filing website reminds attorneys that the revision "make[s] the 3-day mailing rule no longer applicable to electronic filers and those who have consented to electronic service." There thus is no doubt that the plaintiffs had only seven days in which to file their replies.

Although the plaintiffs' filings were two days late, Fed. R. Civ. P. 6(b) gives the Court discretion to extend a deadline after its passage upon a showing of "excusable neglect."

> Under the law of the United States Court of Appeals of the Fourth Circuit, " '[e]xcusable neglect' is not easily demonstrated, nor was it intended to be . . . 'the burden of demonstrating excusability lies with the party seeking the extension and a mere concession of palpable oversight or administrative failure generally has been held to fall short of the necessary showing . . .'" Thompson v. E.I.

> DuPont de Nemours & Co., 76 F.3d 530, 534 (4th Cir.1995)
> (quoting In re O.P.M. Leasing Serv., Inc., 769 F.2d 911,
> 917 (2d Cir. 1985)). A finding of excusable neglect
> ultimately comes down to a balance of the equities, and
> the decision whether or not to grant an extension
> "remains committed to the discretion of the district
> court." Id. at 532 n.2; see also United States v.
> Borromeo, 945 F.2d 750, 754 (4th Cir. 1991).
>
> . . .
>
> The Supreme Court has developed guidelines of factors
> that courts should consider when determining whether a
> moving party has established excusable neglect. The
> elements for consideration are: (1) "the danger of
> prejudice to [the non-moving party]," (2) "the length of
> the delay and its potential impact on judicial
> proceedings," (3) "the reason for the delay, including
> whether it was in the reasonable control of the movant,
> and" (4) "whether the movant acted in good faith."
> Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507
> U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).
> Quite obviously, the most important of these factors in
> deciding whether the "neglect" was "excusable" is the
> proffered reason for it. Thompson, 76 F.3d at 534.

Anderson v. Spencer, No. 5:09CV117, 2011 WL 6748827, at *2-*3

(N.D.W. Va. Dec. 21, 2011).

Here, the Court agrees with the defendants that the "most

important" factor, the proffered reason for the neglect, weighs

against the plaintiffs: Fed. R. Civ. P. 6 controls and no longer

permits three additional days to reply when service of a response

is accomplished by electronic means. See Thompson, 76 F.3d at 533

("[I]nadvertence, ignorance of the rules, or mistakes construing

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS
TO STRIKE AND GRANTING PLAINTIFFS' MOTIONS TO REMAND**

the rules do not usually constitute 'excusable neglect' . . . .").
Nevertheless, the plaintiffs' misinterpretation is mitigated by the
fact that the Local Rules of this District have not been updated to
reflect amendments to Fed. R. Civ. P. 6. Moreover, the remaining
three factors weigh decidedly in favor of extending the deadline
due to excusable neglect.

First, there is no danger of prejudice to the defendants. They
have, in fact, not identified any prejudice aside from the Court's
consideration of the plaintiffs' arguments. Second, the period of
delay at issue is brief; the plaintiffs erroneously filed their
replies only two days after the proper seven-day deadline had
passed. These two days did not affect the parties' briefing or the
Court's consideration of the motion to remand. Indeed, regardless
of when the plaintiffs' reply briefs were filed, the defendants
would not have had an opportunity to respond to them. Finally, the
defendants do not allege that the plaintiffs acted in bad faith by
misconstruing the applicable rules. Therefore, the relevant factors
indicate excusable neglect, and the defendants' motions to strike
the reply briefs as untimely are **DENIED**.

### 2.    Attached Affidavits

In the alternative, the defendants argue that the affidavits attached to the plaintiffs' reply memoranda should be stricken as improper (Dkt. No. 23 at 3). This argument has merit. Fed. R. Civ. P. 6(c)(2) provides that "[a]ny affidavit supporting a motion must be served with the motion." The Court has discretion to consider late-filed affidavits if it chooses to do so on the basis of good cause or excusable neglect. See Orsi v. Kirkwood, 999 F.2d 86, 91 (4th Cir. 1993) (finding a delay inexcusable partially because the documents in question were available well before the filing deadline). In addition, Rule 6(c)(2) "does not preclude affidavits supporting a reply brief when they respond to evidence supporting an opposition brief." Robinson v. Empire Equity Grp., Inc., No. WDQ-09-1603, 2009 WL 4018560, at *2 & n.14 (D. Md. Nov. 18, 2009).

In other words, affidavits may accompany a reply brief if they support the reply rather than the original motion. See Peters v. Lincoln Elec. Co., 285 F.3d 456, 476 (6th Cir. 2002); see also McGinnis v. Se. Anesthesia Assocs., P.A., 161 F.R.D. 41, 42 (W.D.N.C. 1995) ("[A] party may not file a motion unsupported by any evidence only to spring the evidence on the opposing party on a later date."). Reply affidavits should not present new issues to

which the opposing party will not have an opportunity to respond. See _Omega Cable & Commc'n, Inc. v. Time Warner, Inc._, No. 5:05CV1780, 2008 WL 163613, at *1 (N.D. Ohio Jan. 16, 2008).

Here, the non-diverse defendants, Layton and Simpson, attached affidavits to their notices of removal, averring that they had not participated in TMCC's decision to select the plaintiffs for discharge (Dkt. Nos. 1-2; 1-3; 1-4). In support of their motions to remand, the plaintiffs argued that their complaints sufficiently alleged involvement by the non-diverse defendants. However, they failed to submit timely counter-affidavits to refute the affidavits of Layton and Simpson (Dkt. No. 17 at 7-10). The defendants therefore have argued that the plaintiffs have failed to make a sufficient showing to overcome the undisputed averments in the affidavits of Layton and Simpson (Dkt. No. 20 at 10).

When the plaintiffs filed their reply briefs, they attached a number of contrary affidavits stating that several of them had been called "old timers," had been informed that management was targeting older employees for termination, and had been advised by non-diverse defendants that "we have decided to terminate you." There is no doubt that the plaintiffs could have filed these affidavits when they filed their motion to remand, as the affidavits contain no new information and support the plaintiffs'

contention that non-diverse defendants were involved. See Orsi, 999 F.2d at 91. Nonetheless, two factors counsel against striking the affidavits as improper under Rule 6(c)(2).

First, in support of their motions to remand, the plaintiffs argued that, despite the non-diverse defendants' affidavits, the allegations in their complaints are sufficient to warrant remand because "this Court must accept as true all well-pleaded allegations and must construe the factual allegations in the light most favorable to the plaintiff" (Dkt. No. 17 at 9). Only after the defendants argued that the plaintiffs must proffer evidence did they seek to provide additional factual support for the allegations (Dkt. Nos. 20 at 9-10; 21 at 9). Therefore, the plaintiffs' affidavits permissibly respond to evidence presented by the defendants. Robinson, No. WDQ-09-1603, 2009 WL 4018560, at *2 & n.14.

Second, the plaintiffs' reply affidavits did not raise a new issue to which the defendants will not have an opportunity to respond. See Omega Cable, No. 5:05CV1780, 2008 WL 163613, at *1. The defendants initially raised this issue themselves by presenting relevant affidavit evidence from each non-diverse defendant. Moreover, even if the defendants could create a further factual dispute with additional evidence, at this stage, the dispute would

still be resolved in favor of the plaintiffs. See Johnson, 781 F.3d at 704. The defendants' motions to strike the plaintiffs' reply affidavits therefore are **DENIED**.

**B.   Motions to Remand**

The defendants argue that the plaintiffs' cannot establish a cause of action against the non-diverse defendants (Dkt. No. 1 at 4). Because the plaintiffs have a possible right to relief based on age-discrimination, the defendants have not carried their burden.

**1.   Analogous Cases**

The defendants rely principally on Pack v. S&S Firestone, Inc., No. 5:14-cv-17286, 2014 WL 12625463 (S.D.W. Va. Aug. 27, 2014), in support of their argument. In Pack, the plaintiff was employed by the defendant corporation as a tire technician. Shortly after having surgery, the plaintiff was let go, allegedly due to "cut backs"; eventually, however, the defendant replaced him with a much younger individual. As a result, he filed suit against the corporation and his supervisor for age discrimination in violation of the WVHRA. Id. at *1. The tire corporation removed the case, arguing that the supervisor was not an "employer" within the meaning of the WVHRA, that the plaintiff could not establish a cause of action against him, and he thus had been fraudulently

17

joined. Id. at *3. The plaintiff moved to remand, arguing he had alleged that the defendants - including his supervisor - collectively discriminated against him in violation of W. Va. Code § 5-11-9, which includes "persons" such as supervisors. Id. at *4.

Although the plaintiff's complaint contained references to W. Va. Code § 5-11-9 as a whole, the court found it significant that the plaintiff had only specifically alleged a violation of § 5-11-9(1), not § 5-11-9(7), and concluded:

> Unfortunately for the Plaintiff, here, his complaint does not contain a claim for violating W. Va. Code § 5-11-9(7), nor does it allege that White aided, abetted, incited, compelled or coerced the alleged discrimination. Accordingly, there is no cause of action against White, a fellow employee and the Plaintiff's supervisor, under W. Va. Code § 5-11-9(1), as currently pled. The Defendants have successfully met their burden of demonstrating that the Plaintiff could not possibly establish a cause of action against White for violating . . . W. Va. Code § 5-11-9(1). Therefore, White must be dismissed as fraudulently joined, and, consequently, this Court enjoys subject matter jurisdiction over the remaining Defendants.

Id. at *7.

Other cases, however, have found a possibility of relief under the WVHRA in similar circumstances. For example, in Simmons v. Taco Bell of America, Inc., the plaintiff filed suit in the Circuit Court of Kanawha County alleging that she had been terminated from her employment at Taco Bell on the basis of her age. The plaintiff

also named her manager, a non-diverse defendant, whom she alleged had authority over her. Taco Bell removed the case, claiming that the manager had been fraudulently joined because she was not an "employer" and "exercised no authority which adversely impacted the Plaintiff." No. 2:11-cv-00125, 2011 WL 2076413, at *1 (S.D.W. Va. May 25, 2011).

The district court rejected Taco Bell's first argument, noting simply that the WVHRA permits individuals to be held liable for discrimination. Id. at *2. The court also found a "slight possibility of a right to relief" even though "[t]he only specific allegations against [the manager] in the bare-bones pleadings [were] that he [was] a West Virginia resident who was a management employee of Taco Bell during the relevant time period." Although this may have been insufficient to state a claim, the court found it was sufficient to establish a possibility of relief. Id. at *3.

Moreover, despite Taco Bell's contention that the manager had not participated in the decision to terminate her, the plaintiff presented contrary evidence indicating that the manager had been her "de facto" supervisor. Resolving this factual dispute in favor of the plaintiff, the district court remanded the case to state court. Id. at *3; see also Mills v. Blackhawk Mining, LLC, No. 2:15-cv-13338, 2015 WL 6511316 (S.D.W. Va. Oct. 28, 2015)

(reasoning that, although a manager denied involvement, "the plaintiff ha[d] adequately alleged that [the manager] participated in the decision to terminate his employment"); Hannah v. GC Servs. Ltd. P'ship, No. 3:14-24866, 2015 WL 400620 (S.D.W. Va. Jan. 28, 2015) (remanding because the plaintiff had alleged that non-diverse employees "were managers and made significant decisions and had substantial input into the decision regarding" her employment, such that she believed they "had input in the decision to fire").

This Court adopted a similar approach in Cain v. CVS Pharmacy, Inc., No. 5:07CV117, 2007 WL 3228115 (N.D.W. Va. Oct. 30, 2007). In Cain, the plaintiff filed suit under the WVHRA against her employer and a non-diverse "co-worker who purportedly was involved in the unlawful decision to discharge her" based on her pregnancy. Id. at *1. The plaintiff alleged that the coworker had "participated in" the alleged acts of discrimination. The defendants removed the case, arguing that the co-worker had been fraudulently joined. The Court disagreed.

> Examining West Virginia law in the light most favorable to Cain, it is clear that a cause of action exists in West Virginia against individuals under the Human Rights Act. See, e.g., Syl. Pt. 4, Holstein v. Normandex, Inc., 461 S.E.2d 473 (W. Va. 1995). Moreover, any person, whether or not that person has decision-making or supervisory authority, can be liable under the West Virginia Human Rights Act if that person "aid[s], abet[s], incite[s], compel[s], or coerce[s] any person to

20

> engage in any of the unlawful discriminatory practices
> defined in [the Act]." W. Va. Code § 5-11-9. Therefore,
> viewing the law in the light most favorable to Cain, she
> has asserted a viable cause of action against Young.
>
> . . .
>
> An examination of the defendants' assertions and a review
> of the entirety of the record in the light most favorable
> to Cain establishes that the defendants have failed to
> carry their heavy burden to show that there is no
> "glimmer of hope" that Cain could prove any set of facts
> to support her claims against Young.

Id. at *2. Because the co-worker had not been fraudulently joined,

the Court remanded the case. Id.

### 2. Application

The question presented by the plaintiffs' motions to remand is

whether they have asserted a possible right to relief against

Layton and Simpson under the WVHRA. To make this determination, the

Court must review the entire record "and resolv[e] all issues of

law and fact in the plaintiff's favor." Johnson, 781 F.3d at 704.

Upon careful review, the Court concludes that the defendants cannot

meet their heavy burden to establish that the law or facts

completely foreclose from the plaintiffs the relief sought from

Layton and Simpson.

First, there is no doubt that the WVHRA provides a cause of

action for age and disability discrimination perpetrated by

individuals, including fellow employees. <u>See</u> W. Va. Code § 5-11-9(7); <u>Holstein v. Norandex, Inc.</u>, 461 S.E.2d 473 (W. Va. 1995). "Accordingly, the plaintiff[s] can, as a matter of law, bring a claim against" Layton and Simpson. <u>Simmons</u>, No. 2:11-cv-00125, 2011 WL 2076413, at *2.

Second, the plaintiffs' complaints establish a possible right to relief pursuant to those provisions of the WVHRA. Although the defendants contend that the plaintiffs' failure to cite the specific code section regarding individual WVHRA liability or to use statutory language such as "aiding and abetting," <u>see</u> W. Va. Code § 5-11-9(7), is fatal, that failure is not determinative; the plaintiffs need not state a claim for relief in order to defeat an assertion of fraudulent joinder. <u>Mayes</u>, 198 F.3d at 466.

The complaints specifically allege that Layton is TMCC's Human Resources Director and that Simpson is a TMCC Vice President. <u>See</u> <u>Simmons</u>, No. 2:11-cv-00125, 2011 WL 2076413, at *3. The plaintiffs further allege that "the defendants' actions" resulted in damage, which arises either from constructive discharge or "termination from . . . employment . . . based, in whole or in part, upon plaintiff's age, in violation of the West Virginia Human Rights Act, West Virginia Code § 5-11-9(1)" (Dkt. No. 1-1 at 8). The complaints thus plainly allege that "the defendants," including

22

non-diverse management employees, terminated the plaintiffs' employment based on their age. Such individual participation, although thinly pleaded, could subject Layton and Simpson to "aiding and abetting" liability under § 5-11-9(7).

No doubt, the allegations of the complaint and the non-diverse defendants' affidavits are "limited and contradictory." <u>Simmons</u>, No. 2:11-cv-00125, 2011 WL 2076413, at *3. But resolving this factual dispute in favor of the plaintiffs, as the Court must, leads to the conclusion that their "bare bones" allegations of discrimination are sufficient to establish a "possibility of a right to relief" against Layton and Simpson under the WVHRA. <u>Cf.</u> <u>Mills</u>, No. 2:15-cv-13338, 2015 WL 6511316. <u>But see</u> <u>Pack</u>, No. 5:14-cv-17286, 2014 WL 12625463, at *7.[5] Therefore, because the plaintiffs have a "glimmer of hope" for obtaining relief against

---

[5] Moreover, although not necessary to the Court's conclusion, the plaintiffs' reply affidavits provide further evidence of the existing factual dispute. Each of the plaintiffs submitted two affidavits that implicate Layton and Simpson in the reduction-in-force decision-making. Plaintiff Chapman recounts that Murray advised he was being demoted because he was "old and set in [his] ways," and Chapman was later informed of his termination during a meeting with Simpson and Layton at which they said "<u>we</u> have decided to terminate you" (Dkt. No. 21-4). Likewise, Aldridge was informed of his termination during a meeting with Simpson and Layton at which they said "<u>we</u> have decided to terminate you from your employment" (Dkt. No. 21-2).

the non-diverse defendants, the Court **GRANTED** the motions to remand.[6]

### V. CONCLUSION

In conclusion, for the reasons discussed, the Court:

1) **DENIED** the defendants' motions to strike (1:17cv79, Dkt. No. 22; 1:17cv80, Dkt. No. 22; 1:17cv81, Dkt. No. 22; 1:17cv82, Dkt. No. 22; 1:17cv83, Dkt. No. 23; 1:17cv84, Dkt. No. 22; 1:17cv85, Dkt. No. 22; 1:17cv86, Dkt. No. 22; 1:17cv87, Dkt. No. 22);

2) **GRANTED** the plaintiffs' motions to remand (1:17cv79, Dkt. No. 16; 1:17cv80, Dkt. No. 16; 1:17cv81, Dkt. No. 16; 1:17cv82, Dkt. No. 16; 1:17cv83, Dkt. No. 17; 1:17cv84, Dkt. No. 16; 1:17cv85, Dkt. No. 16; 1:17cv86, Dkt. No. 16; 1:17cv87, Dkt. No. 16);

3) **REMANDED** these cases to the Circuit Court; and

4) **DENIED** the plaintiffs' requests for the imposition of attorneys' fees and costs under 28 U.S.C. § 1447(c),

---

[6] Had the Court declined to remand their original complaints, the plaintiffs argued that it should remand based on their amended complaints (Dkt. No. 17 at 11). Although the Court need not reach this issue, it notes that such an approach likely would be improper here. See Dotson v. Elite Oil Field Servs., Inc., 91 F. Supp. 3d 865, 870 (N.D.W. Va. 2015); Gum v. Gen. Elec. Co., 5 F. Supp. 2d 412 (S.D.W. Va. 1998).

finding an "objectively reasonable basis" for the defendants' removal existed. <u>See</u> <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005).

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: August 10, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE